QUESTIONS:
1. Is a referendum as required under s. 171.0413, F. S. (1976 Supp.), necessary when a voluntary annexation ordinance is adopted pursuant to s. 171.044, F. S. (1976 Supp.)?
2. If the answer to question 1 is in the negative, does a municipality have the power to require a referendum even though such is not required by statute?
3. Does Ch. 171, F. S., permit the adoption by a municipality of annexation procedures which may be contrary to the procedures for municipal annexation set forth in Ch. 171?
SUMMARY:
No referendum is required when a municipality voluntarily annexes unincorporated territory pursuant to s. 171.044, F. S. (1976 Supp.). Because of s. 2(c), Art. VIII, State Const., and the expressions of intent in Ch. 171, F. S., regarding statewide uniformity of annexation procedures, municipalities are not empowered (absent express special law authorization) to require referendum approval of voluntary annexation or to enact any annexation procedure which is contrary to the procedures set forth in Ch. 171.
Any consideration of municipal annexation should be begun with an awareness of the controlling organic law provision, s. 2(c), Art. VIII, State Const., which provides:
 Municipal annexation of unincorporated territory, merger of municipalities, and exercise of extra-territorial powers by municipalities shall be as provided by general or special law. (Emphasis supplied.)
The effect of this provision of the Constitution is that any annexation must be effected either directly by the Legislature (by special law) or by a municipality in accordance with the authorization and procedures provided by a general law (Ch. 171, F. S.). Where annexation is carried out by a municipality pursuant to general law, the procedures of the general law must be strictly followed. In Town of Mangonia Park v. Homan, 118 So.2d 585, 588 (2 D.C.A. Fla., 1960), the court stated: `Where the power to extend boundaries has been delegated to a municipal corporation, the power must be exercised in strict accord with the statute conferring it.' (Emphasis supplied.) Thus, the provisions of s. 2(c), Art. VIII, constitute a specific exception to otherwise applicable constitutional and statutory municipal home rule powers.
Your first question is answered in the negative. There is no referendum requirement in Ch. 171 in regard to voluntary
annexation. Chapter 171 provides two methods by which a municipality may annex unincorporated territory: voluntary and involuntary. Involuntary annexation is authorized under s.171.0413, F. S. (1976 Supp.), wherein approval by double referendum (separate majorities in the annexing municipality and
the area to be annexed) is required. In s. 171.0413(4), it is provided that `[e]xcept as otherwise provided in this law, the annexation procedure as set forth in this section shall constitute a uniform method for the adoption of an ordinance of annexation by the governing body of any municipality in this state . . . .' (Emphasis supplied.) This office has consistently interpreted the `except as otherwise provided' language in s. 171.0413(4) as referring to s. 171.044, F. S. (1976 Supp.), which authorizesvoluntary annexation, without a referendum, upon petition of all of the owners of real property in an unincorporated area. The two annexation procedures in Ch. 171 — voluntary and involuntary — are alternative procedures. While there are provisions in Ch. 171 which appear to apply to voluntary and involuntary annexation (e.g., the standards set forth in s. 171.043, F. S. [1976 Supp.]), the two procedures set forth in ss. 171.0413 and 171.044
clearly constitute two distinct options as to the procedure for obtaining approval of an annexation ordinance.
It is also my opinion that your second and third questions should be answered in the negative. First, as I pointed out above, the language of our Constitution makes it clear that municipalities have no inherent power to annex unincorporated territory. Rather such power must be delegated to municipalities by the Legislature and must be strictly followed. Town of Mangonia Park v. Homan,supra. Second, the Legislature has expressed its intention, in Ch. 171, that the method therein provided is to be uniform throughout the state. In s. 171.021(2) it is provided that one of the purposes of Ch. 171 is to `[e]stablish uniform legislative standards throughout the state for the adjustment of municipal boundaries.' In accord is the above-quoted provision in s.171.0413(4), F. S. (1976 Supp.), in which an intent of uniformity of annexation procedures is also clearly expressed. Thus, even were it not for s. 2(c), Art. VIII, supra, providing for annexation only by general or special law, the provisions of Ch. 171 would probably be sufficient evidence of legislative intent to preempt to the state the subject of annexation procedures, irrespective of the home rule powers of municipalities. [As I noted above, the provisions of s. 2(c), Art. VIII, provide a specific exception to otherwise applicable constitutional and statutory municipal home rule powers, as expressly recognized in s. 166.021(3)(a), F. S.]
It is therefore my opinion that a municipality is precluded (absent express general or special law authorization) from enacting any annexation procedures contrary to Ch. 171, F. S., irrespective of whether such procedures would be less stringent or more stringent than those provided in Ch. 171. As referendum approval is not presently required by general law in regard tovoluntary annexation, a municipality — absent valid special law authorization — is not empowered to impose such a requirement.
Prepared by: Jerald S. Price Assistant Attorney General